## DeCordova v. City of Galveston.

Judgment reversed.

Note 100.—Campbell v. Wilson, 6 T., 379.
Note 101.—Weisinger v. Chisholm, 28 T., 780; Ector v. Wiggins, 30 T., 55.

---

### [470] DeCordova v. The City of Galveston.

The construction of the terms "*ex post facto* laws," "laws impairing the obligation of contracts," and "retrospective law" examined and discussed.  (Note 102.)
The term "retrospective," in the bill of rights, was designed to embrace laws which are not included in the description of *ex post facto* laws or laws impairing the obligation of contracts, but which destroy or impair vested rights or rights to do certain actions or possess certain things, according to the laws of the land.  (Note 103.)
Laws which affect the remedy merely are not within the scope of the inhibition against retrospective laws unless the remedy be entirely taken away or be incumbered with conditions that would render it useless or impracticable.  There cannot be a vested right to any particular remedy, until suit be commenced, at least.
Whether statutes of limitations affect the remedy merely or pertain to the contract is not now an open question.
The first section of the act of limitations of 1841 applies as well to contracts then existing as to those subsequently made.
Where one period of limitation or prescription takes the place of another, the principle of computation is established in Gautier v. Franklin and Hays v. Cage.  But *quere* when a period of limitation or prescription is established where before there was none.
The facts that the notes were made by a municipal corporation, and that interest was made payable annually, cannot affect the question of limitation; the notes being payable at a certain time after date.
Where interest is payable annually and is not paid, *quere* whether the creditor is entitled to interest upon interest.  (Note 104.)
It *seems* that where interest falls due before the principal, the statute of limitations does not commence running against the claim for interest until the principal is due also, although the creditor might have maintained his separate action for such interest.

Appeal from Galveston.  This suit was instituted on the 28th of April, 1849, on three promissory notes, a copy of one of which is as follows :
"$118.66.  Faith of the city pledged.  No. 21.  Galveston city ten per cent. stock.  The corporation of the city of Galveston will pay Moreau Forest or order, on the first day of January, 1842, one hundred and eighteen 66–100 dollars in par funds, with interest on the same from the first day of August, 1840, until paid, at the rate of ten per cent. [471] per annum ; the first payment of

DeCordova v. City of Galveston.

interest to be made on the first day of January, 1841, and annually thereafter until final liquidation, in accordance with an ordinance passed and approved by the mayor and board of aldermen on the 27th day of August, 1840."

The two others were for the same amount and of the same tenor, except the difference in numbers and the date of their maturity; one being payable on the 1st day of January, 1843, and the other on the 1st day of January, 1844. The defendant demurred and pleaded the statute of limitations. To the plea of the statute of limitations the plaintiff demurred. Both demurrers were overruled.

A jury was waived. In support of the issue on the facts, the plaintiff produced the original notes, and the notarial certificate of the demand and refusal of payment on the 17th April, 1849, was admitted as proved. Here the case closed, and judgment was rendered in favor of the defendant.

*I. A. & G. W. Paschal*, for appellant. It will be seen that these contracts bore date before the statute of limitations of 1841, under the first section of which this plea was pleaded. (Acts 1841, p. 163, sec. 1.) This was a remedial act, intended to operate prospectively, and not to affect contracts then in existence. Such is understood to be the intention of the decisions of this court in giving effect to the ten-year statute which existed prior to the act of 1841. (Gautier *v.* Franklin, 1 Tex. R., 732; Carson *v.* Rainey, 2 Tex. R., 296; Ingram *v.* Ingram, 2 Tex. R., 590; Ennis and Reynolds *v.* Cocke, 2 Tex. R., 592; Frosh *v.* Swett, 2 Tex. R., 485; Coles *v.* Kelsey, Id., 541.) These contracts were executed on the 27th day of August, 1840, at Galveston, when there was no law of limitation in existence; the ten-year statute of Spain having been repealed by the common-law act of 1840, and no new law having been enacted until the 9th February, 1841. (Gautier *v.* Franklin, 1 Tex. R., 740.) The old maxim that the statute of limitations affects the remedy merely and not the [472] rights, that the law of the forum and not of the contract is to govern, has been a good deal modified of late years. The cause of action on each of these notes really accrued before the passage of the act, because the first payment of interest on each was to be made on the 1st day of January, 1841. The allowance of the plea was therefore to give a retroactive effect to the law. And courts of justice have expressed the strongest disapprobation of retroactive legislation, and will not give to a law a retroactive construction if it be susceptible of any other. (Calder *v.* Bull, 3 Dall. R., 386; 1 Cond. R., 386; Dash *v.* Van Kleek, 7 Johns. R., 477.)

II. The fact that no demand was made until March, 1849, seems to us to take the case out of the statute. The debt was a security given by a corporation, and which could only be paid by proper officers. It was like a bank-note drawing interest, but which nevertheless is never barred by the statute of limitations. Interest was stipulated for, but the cause of action did not accrue as to the principal until demand. It would be a dangerous precedent to place the paper of a corporation on the same footing of the paper of individuals.

III. If the money was really in the hands of the treasurer of the city, he held it in trust for the plaintiff, and a refusal to pay him, or an appropriation of the money otherwise than to his use, was such a breach of trust and fraud as to avoid the statute; for a trust or fraud avoids the statute of limitations. (6 Madd., 326; 2 B. & B., 275; R. & M., 255; Daug., 656; 2 B. & B., 73; Mass. Turnpike Company *v.* Fields and others, 3 Mass. R., 201; Sherwood *v.* Sutton, Gall. R., 143; Croft *v.* Arthur, 8 Ds. L. C. R., 223; Lewis *v.* Stafford, 4 Bibb, 318.)

*Joseph & Howard*, for appellee. The court correctly overruled the plaintiff's demurrer to the defendant's plea of the statute of limitation. It is true that at the time of the making of these contracts or promissory notes there was no statute of limitation in force; but prior to their maturity one had been enacted by the Congress of the Republic of Texas [473] which is yet in force. (Acts

## DeCordova v. City of Galveston.

of 1841, p. 163.) That statute, it is contended, applies to this case. Statutes of limitation affect the remedy only. (2 Bibb R., 207; 6 Wend. R., 475; 3 J. J. Marsh R., 600; 5 Pet. R., 457; 3 Id., 270; 3 Johns. R., 263; Gautier v. Franklin, 1 Tex. R., 732.)

HEMPHILL, CH. J. The only question deemed material to discuss is whether the action was barred by the statute of limitations approved 5th February, 1841.

The principal ground in support of the position that the action was not barred is that the operation of the statute was prospective, and could not constitutionally affect contracts in existence at the time of its passage. The promissory notes were executed in 1849, during the interval between the abolition of the Spanish laws of prescription and the passage of the statute, and when there were consequently no laws of limitation in force. To the satisfactory solution of the question whether the contract was affected by the subsequent law of limitation we will consider—

1st. Whether, under the Constitution of the Republic of Texas, any law of limitation could, without a violation of the Constitution, operate on contracts previously made.

2d. Whether the first section of the statute extends as well to existing contracts as to those made subsequent to the passage of the statute.

The Constitution of the Republic declares that "no retrospective or *ex post facto* law, or law impairing the obligation of contracts, shall be made," (sec. 16, Dec. of Rights;) and if the law, as applied to the cause of action, be within the intent of the inhibition, it is null and inoperative. It is very clear that the law does not come within the technical definition of an *ex post facto* law, which is limited to offenses, and declares an action indifferent in itself at the time of its commitment to be an offense, and punishes the person who has committed it. (1 Black. Com., 46; 3 Dallas R., 386.) Nor does it violate the prohibition against laws which impair the obligation of contracts. A distinction has always been taken [**474**] between the obligation of a contract and the remedy for its enforcement; and it has never been doubted but that the Legislature may vary "the nature and extent of the remedy, so that some substantial remedy be in fact left." A State may at pleasure regulate the modes of proceeding in its courts in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations, or exempt the necessary implements of agriculture, or the tools of the mechanic, or articles of necessity in household furniture, from execution. "Regulations of this description have always been considered, in every civilized community, as properly belonging to the remedy, to be exercised or not by every sovereignty according to its own views of policy and humanity," and as not impairing the obligation of the contract. (Bronson v. Kinzie et al., 1 How. U. S. R., 315.)

The question then arises whether the statute, as applied to past contracts or transactions, is retrospective within the meaning and intent of the constitutional prohibition. *Ex post facto* laws and such as impair the obligation of contracts are retrospective; but there may be retrospective laws which are not necessarily *ex post facto*, or which do not impair the obligation of contracts; and by the use of the term "retrospective" cases were doubtless intended to be included not within the purview of the two former classes of laws. In attempting to ascertain the intent of the convention, in prohibiting retrospective laws, we derive but little assistance from the literal meaning of the term; for that is no more expressive of the intent of the prohibition than is the literal meaning of the terms *ex post facto* of the intention in prohibiting laws of the latter class. In Calder *v.* Bull, (3 Dallas R., 386,) one of the earliest, if not the first case in which it became necessary for the Supreme Court of the United States to consider whether an act of a State Legislature was in violation of the prohibition against *ex post facto* laws, it was deemed expedient to define fully the meaning of that provision in the Constitution.

## DeCordova v. City of Galveston.

"The prohibition," says Judge Chase, " that no State shall [475] pass any *ex post facto* law necessarily requires some explanation ; for naked and without some explanation it is unintelligible and means nothing. Literally it is only that a law shall not be passed concerning and after the fact or thing done or action committed. I would ask what fact, of what nature or kind, and by whom done? That Charles the First, King of England, was beheaded : that Oliver Cromwell was protector of England, &c.; are facts that have happened ; but it would be nonsense to suppose that the States were prohibited from making any law after either of these events, and with reference thereto. The prohibition in the letter is not to pass any law concerning and after the fact, but the plain and obvious meaning and intention of the prohibition is this : that the Legislatures of the several States shall not pass laws after a fact done by a subject or citizen which shall have relation to such fact, and punish him for having done it." Such laws as were considered *ex post facto* laws within the words and intent of the prohibition were then stated, and great reliance was placed on the definitions of *ex post facto* laws as found in the Constitutions of several of the States.

The prohibition against the passage of retrospective laws appears to me equally to require explanation with the inhibition against *ex post facto* laws ; for unless the meaning of the restriction is qualified by its object, and the acceptation in which it is to be received can be thus shown, it either means nothing more than·is included in the restriction against *ex post facto* laws, and such as impair the obligation of contracts, or it has a latitude of signification which would embarrass legislation on existing or past rights and matters to such an extent as to create inextricable difficulties, and in fact to demonstrate that it was incapable of practical application. A retrospective law literally means a law which looks backwards or on things that are past; or if it be taken to be the same as retroactive, it means to act on things that are past. If it be understood in its literal meaning, without regard to the intent, [476] then all laws having an effect on past transactions or matters, or by which the slightest modification may be made of the remedy for the recovery of rights accrued or the redress of wrongs done, are prohibited equally with those which divest rights, impair the obligation of a contract, or make an act, innocent at the time it was done, subsequently punishable as an offense. If, for instance, at the accrual of a right or the breach of a contract,.or even at the time of its execution, no courts were organized or empowered to afford a remedy, a subsequent law organizing courts, defining their powers and jurisdiction, and regulating their proceedings would, where the subject-matter of adjudication originated in past transactions, be in a literal sense retrospective ; or, if courts had been organized and their proceedings regulated by law at the time of entering into a contract, and the prohibition be understood literally, these regulations must govern the proceedings when suit is brought, although they may have been previously repealed and others substituted. The Legislature would be deprived of "all power of regulating the mode in which process shall be issued and served, how the pleadings shall be filed, and at what term the judgment shall or may be entered " in reference to past causes of action. (Mr. Justice McLean's opinion in Bronson *v.* Kinzie *et al.*, 1 How. R., 329.) If any particular form of action had been prescribed by the Mexican system of jurisprudence for the trial of title to lands, the action of trespass for that purpose could not be brought on any title existing previously to the introduction of the common law. The laws of prescription at the date of a contract could not be abolished as applicable to such contract ; nor could a new statute operate on the contract, though made expressly applicable.

In attempting to ascertain the·intent of the prohibition, we can derive material assistance from the examination of the Constitutions of other States, in which similar restrictions are to be found, and from the decisions of the enlightened tribunals by which such provisions have been considered and expounded.

## DeCordova v. City of Galveston.

The Constitution of Tennessee contains an inhibition similar to our own against retrospective laws; and it has been held that under this prohibition a new or additional remedy may be provided for a just right already in being, and which would be lost without such provision. Deeds not registered in time may, upon this ground, be admitted to registration by a new act of the Legislature. (2 Yerg. R., 125; Id., 269.) An act of the Legislature authorizing bills in equity to be filed to defeat usurious contracts applies to contracts entered into and judgments obtained before its enactment as well as after, and is not a retrospective law in the sense in which the Constitution prohibits the passage of such laws, as it does not create a right, but merely regulates the remedy. (7 Humph. R., 130.) The Constitution of New Hampshire declares that "retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes or the punishment of offenses." And it was held in Merrill v. Sherburne (1 N. H. R., 199) that a statute purporting to grant a new trial in a civil cause after a final judgment was retrospective and therefore void. In 3 N. H. R., 481, it was stated that the restrictive clause of the Constitution, in application to civil cases, was intended to prohibit the making of any law prescribing new rules for the decision of existing causes, so as to change the ground of action or the nature of the defense; and that an act of the Legislature repealing a statute of limitations is, with respect to all actions pending at the time of the repeal and which are barred by the statute, a retrospective law for the trial of a civil cause, repugnant to the Constitution, and wholly inoperative. In Clark v. Clark (10 N. H. R., 386) the principle was extended to the protection of existing causes of action or rights of defense, though no legal proceeding or suit had been instituted at the passage of a statute; and as the prohibition had been repeatedly presented to the court, and their opinion as to its true construction is of the highest authority, a portion of it will be cited, in which their views are given as to the extent [478] of the inhibition and the character of the laws which are operation if it affect an existing cause of action or an existing right of defense, or are not within its scope and intention : "A law may be retrospective in its by taking away or abrogating a perfect existing right, although no suit or legal proceeding then exists. Of course it is not intended to deny the right of the Legislature to vary the mode of enforcing a remedy, or to provide for the more effectual security of existing rights, or to pass laws which change existing rules under which rights would be acquired by lapse of a certain period of time, part of which has already passed.

The statute of limitations may be changed by an extension of the time or by an entire repeal, and affect existing causes of action which, by the existing laws, would soon be barred. In such cases the right of action is perfect, and no right of defense has accrued from the time already elapsed ; but if a right has become vested and perfect, a law which afterwards annuls or takes it away is retrospective."

In the case of The Society v. Wheeler et al., (2 Gall. R., 105,) which was a suit commenced in 1807 for the recovery of lands in New Hampshire, a claim was set up by the defendants for the value of improvements, under a statute passed in 1805, which allowed tenants who had been in possession for six years, under a supposed legal title, a sum equal to the increased value of the land. It was held that the statute of 1805, if applied to the case, would be a retrospective law for the decision of a civil cause; and it was stated by Mr. Justice Story that, on principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, or imposes a new duty, or attaches a new disability, in relation to transactions or considerations already past, must be deemed retrospective.

In Calder v. Bull (3 Dall R., 391) it is said by Judge Chase that every law which takes away or impairs rights vested agreeably to existing laws is retrospective, and is generally unjust and may be opposed; and it is a good general

## DeCordova v. City of Galveston.

rule that a law should have no retrospect. But there are cases in which the laws may justly, and for the benefit of the community and also of individuals, relate to a time antecedent to the time of their commencement; as statutes of oblivion or of pardon. Every law that is to have an operation before the making thereof, as to commence at an antecedent time, or to save time from the statute of limitations, or to excuse acts which were unlawful and before committed, or the like, is retrospective; but such laws may be proper or necessary, as the case may be.

It was decided by the Supreme Court of the Republic that a law which infringes a vested right by retrospective action, is void under the Constitution. (Dallam, 517.)

In the case of Merrill v. Sherburne et al., (1 N. H. R., 213,) to which we have previously referred, it was maintained that legislative acts are not within the prohibition against retrospective laws unless they operate on the interests of individuals or private corporations; nor are they within them when in an implied or express manner the parties affected have consented to their passage; and instances are cited in which such consent is actually given or may be presumed. Nor can acts of the Legislature be opposed to those fundamental axioms of legislation unless they impair rights which are vested, because most civil rights are derived from public laws; and if, before the rights become vested in particular individuals, the convenience of the State produces amendments or repeals of those laws, those individuals have no cause of complaint. The power that authorizes or proposes to give may always revoke before an interest is perfected in the donee.

The cases to which reference has been made, and the opinions of the courts in expounding this constitutional inhibition, will serve to illustrate the intention of the convention in imposing the restriction. Laws are deemed retrospective and within the constitutional prohibition which by retrospective operation destroy or impair vested rights or rights to " do certain actions or possess certain things, according to the [480] laws of the land," (3 Dall. R., 349,) but laws which affect the remedy merely are not within the scope of the inhibition unless the remedy be taken away altogether or incumbered with conditions that would render it useless or impracticable to pursue it. (Bronson v. McKinzie, 1 How. R., 315.) Or, if the provisions regulating the remedy be so unreasonable as to amount to a denial of right, as, for instance, if a statute of limitations applied to existing causes barred all remedy or did not afford a reasonable period for their prosecution, or if an attempt were made by law, either by implication or expressly, to revive causes of action already barred, such legislation would be retrospective within the intent of the prohibition, and would therefore be wholly inoperative.

There cannot, in the nature of things, be a vested right to the remedy which existed at the date of a contract; or, in other words, the mode, times, and manner of prosecuting suits must be left to the regulation of the legislative authority. If a remedy formed a part of the contract, it should follow it into a foreign country, and be prosecuted in the form of action prescribed by the lex loci constructus at its date; and this although a different form may be allowed where the suit is instituted, or there be no forms of action permitted or recognized by law.

That statutes of limitations are remedial in their character has been decided in the cases of Gautier v. Franklin (1 Tex. R., 736) and Hays v. Cage, (2 Tex. R.,) and this cannot be considered an open question. As forming a part of the remedy, they may be modified or changed, but under the restrictions expressed in a former part of this opinion; and statutes abolishing the times of limitations or establishing new terms of prescription are not in violation of the Constitution, and it is only on the inadmissible principle that a remedy forms a part of the contract that its modification would be retrospective within the intent of the inhibition.

I proceed to examine whether the first section of the statute [481] of lim-

240

## DeCordova v. City of Galveston.

itations extended as well to contracts then existing as to those subsequently made.

This point can scarcely be considered as open for argument. The only difference of opinion that has been entertained as to the applicability of the statute to past rights and transactions is whether the time which had elapsed under an old law of prescription should be computed, in reference to its effect under that law, in ascertaining the time in which the bar would be complete under the new law of prescription; or whether this should be disregarded, and the time computed as if the cause of action had accrued on the day the statute went into operation. We have determined that the time which had elapsed previous to the passage of the statute should not be disregarded; and the only difference between this and former causes is that the contract was made when there was no law of limitation in force, though the cause of the action did not accrue until after the passage of the statute.

It will not be necessary to determine what should be the rule of computation, under a statute of limitations, on a cause of action accruing before the adoption of the statute and when no law of limitation was in force. If, on principles of equity, presumptions were permitted to supply the place of positive law, and a considerable period had elapsed after the accrual of the cause of action and before the passage of a statute, it would seem that the same rule should be applied as in cases where time had run during the continuance of a former law of prescription. The rules fixing the time for the commencement of actions, whether on causes accruing before or after the passage of a statute, should always be clearly defined and positively prescribed by law. As little latitude should be left as possible to construction; for on no subject within the range of jurisprudence have courts differed more widely from themselves and from each other than on questions arising on statutes of limitation. No room should be left for evasion of the statute or supplying its deficiencies, on the ground that causes cognizable in equity are not within [482] the intent of the statute, or on any like grounds; and the exceptions which are to be made to the operation of the statute should be specified and defined by the legislative will, and not intrusted to the uncertain powers of construction. (10 Gill & John. R., 316; 2 McMull. R., 84; 8 Ham. R., 298.)

The fact that the notes were made by a corporation cannot operate to the defeat of the statute. The notes became due at fixed periods, and a cause of action accrued on each at the date of its maturity. The fact that interest was payable annually cannot affect the question. The interest might have, perhaps, been recovered in a separate suit; or if the action had been brought before the bar of the statute, the plaintiff would have been entitled to annual rents and to interest upon the interest in computing the amount to be recovered. In a late case decided in Vermont, (19 Verm. R., 467,) on a note due in four years from date, with interest payable annually, it was held, on a question whether the statute commenced running from the maturity of the note or the accrual of the first installment of interest, that the plaintiffs might have instituted a suit for the recovery of a year's interest, but they were not bound to do so; that the statute did not begin to run upon the demand until the principal became payable; and that the accruing interest was not separated from the principal demands; and consequently the statute of limitations does not run upon it until the principal is barred by the statute. For some judicious and striking views on the subject of retrospective laws, see Davis v. Minor (1 How. Miss. R., 183) and Couch v. McKee, (1 Engl. Ark. R., 491.)

We are of opinion that there is no error in the judgment of the court below, and it is ordered that the same be affirmed.

Judgment affirmed.

Note 102.—Sherwood v. Fleming, 25 T. Supp., 408.
Note 103.—Bender v. Crawford, 33 T., 470; Rivers v. Washington, 34 T., 267; Moseley v. Lee, 37 T., 479; Bentick v. Franklin, 38 T., 458; Wood v. Welder, 42 T., 409.
Note 104.—Andrews v. Hoxie, 5 T., 171; Lewis v. Paschal, 37 T., 315.