GEO. PFEUFFER V. H. A. MALTBY.

(Case No. 543.)

1. CHARGE OF COURT — PRACTICE.— A charge of the court will not be considered on appeal unless there be a statement of facts in the record, except in a case where the pleadings contain matter which shows the charge to be necessarily erroneous.

2. CONTRACT — PARTNERSHIP — PUBLIC POLICY.— Although a contract of partnership may be illegal, it does not follow that it is illegal or immoral for the parties to it, to fairly adjust the profits and losses that have resulted from it.

3. SAME.— After a partnership confessedly against public policy has been carried out, and money contributed by one of the parties has passed into other forms, a partner in whose hands the profits are, after the results of the partnership enterprise are completed, cannot refuse to account for and divide on the ground of the illegal character of the original contract.

ERROR from Nueces. Tried below before the Hon. T. C. Barden.

Suit by the appellant against the appellee, instituted January 15, 1866, for his partnership interest in the proceeds of their copartnership business as manufacturers of tinware, and also for the value of a buggy and harness sold by the plaintiff to the defendant, of the value of $50, on separate individual account. The plaintiff alleged that the partnership was entered into in the year 1863, stating the terms thereof; and in an amended petition attached a bill of particulars of items in support of his cause of action, and also added to the original cause of action an account against the defendant, an additional individual account in his favor, for goods, wares and merchandise sold and delivered, amounting to $450. The aggregate claim of the plaintiff on his several causes of action was one thousand dollars. The plaintiff further amended his petition, and in effect alleged that the items of private account between himself and defendant were used for the benefit of the partnership, and that the same should be treated as contributions by him thereto, and credited to him accordingly in the partnership account in the settlement thereof.

The defendant answered by a general denial, plea in set-off and in reconvention, that the purpose of the partnership was to enable plaintiff and defendant to realize and obtain Confederate treasury notes, and carry on an illegal traffic thereby during the war, by exporting cotton to Mexico, and bringing in return from Mexico divers articles in aid of the wants of the people of Texas. The defendant filed afterwards a plea, which is referred to in the assignment of errors as defendant's "last plea," the purport of which was to set up the defense that the partnership was formed during the war between the Confederate States and the United States government, for the purpose of aiding the former by furnishing manufactured

tinware; which services thus to be rendered were accepted in lieu of the military services of the plaintiff and defendant; and that plaintiff used the Confederate money received by him from the sale of the tinware to purchase cotton, which he shipped into Mexico and sold for specie. All of which he alleged was contrary to the public policy of the United States and against good morals.

During the progress of the cause the matters in dispute were submitted to an auditor, H. A. Gilpin, who, after hearing the proofs, returned into court his auditorial report. The defendant filed a motion to exclude the report of the auditor on several grounds, among which the principal were, that it was "excessive and oppressive, and not in accordance with the testimony adduced before the auditor." Also for the alleged improper exclusion of evidence offered to the auditor, tending to show that the plaintiff was, as alleged in the plea, engaged in aiding the enemies of the United States government; that the conclusions of the auditor upon the evidence were incorrect, and that the proceedings before him show that the parties to this suit were, at the time of the accrual of plaintiff's cause of action, engaged in rebellion, and that the vouchers offered by the plaintiff to establish his claim showed that it was against public policy. This motion was filed in 1871. The last plea filed by defendant, setting up the illegality of the contract of partnership by reason of its purpose to supply the Confederate government with tinware, etc., was filed three years afterwards.

The motion to set aside the report was determined at the October term, 1874, when the case was finally heard and disposed of, and was sustained, as appears by the entry from the minutes. There was no bill of exceptions showing the circumstances attending the ruling, nor grounds upon which it was based. The auditor's report and the proceedings had before him appear in the record;

they constitute an extensive volume of matter, embracing much testimony heard by the auditor.

The plaintiff excepted to the sufficiency in law of the last plea filed by the defendant, which exception was overruled by the court. The cause was tried before a jury; verdict as follows: "We, the jury impaneled in the case of George Pfeuffer v. H. A. Maltby, find the tin-shop contract illegal and no cause of action under same. We further find the defendant indebted to plaintiff in the sum of $207 coin, for articles of plaintiff converted to his own use, said $207 to draw interest at the rate of eight per cent. per annum from November 10, 1863, until paid. We further find the plaintiff indebted to the defendant in the sum of $250 coin, with interest at the rate of eight per cent. per annum from November 10, 1864, until paid." The defendant remitted the balance found in his favor, and judgment was rendered against the plaintiff for costs.

The court charged the jury as follows:

"1. A contract in itself illegal cannot be made the basis of a legal action. In every lawsuit there must be exhibited a legal cause of action to entitle the party bringing the suit to maintain his cause in court. Courts will not enforce obligations entered into in violation of the law, or good morals, or public policy.

"2. A contract of partnership designed to aid the Confederate government by furnishing field or camp equipage to its forces, is illegal and void, because it is contrary to good morals, public policy, and the law of the land. Courts have no power to adjudicate questions of supposed right arising under such a contract between the parties to it, because in law they are both wrong-doers.

"3. If you find that in the formation of the contract of partnership, the plaintiff and defendant contemplated the securing of contracts from the Confederate government or its agents, for supplying its forces with articles of

field or camp equipage, and if such was one of the main objects of the partnership, then such a contract is illegal and void, because contrary to good morals and public policy."

The charge of the court proceeded then to instruct the jury as to the rules applicable to the evidence and the rights of the parties on the hypothesis, also, that the contract of partnership may have been formed for legal purposes, and not subject to the objection of illegality as being against good morals and public policy; thus presenting to them the determination of the question of fact under the evidence, whether the contract was valid or not. The court also charged the jury, in effect, that if they were satisfied that the contract of partnership was in itself a valid contract and for legitimate purposes, that although some of the transactions incidental to the carrying on of the business may have been had with the Confederate States government and its officers, and may have been in themselves illegal, yet in a settlement between the parties themselves, they would take such transactions into consideration in arriving at an adjustment of the account of the parties.

There was no motion for new trial; nor is there in the record any bill of exceptions or statement of facts.

The appellant assigned the following errors:

1st. The court erred in setting aside the report of the auditor.

2d. The court erred in overruling the exceptions of plaintiff to the last plea of the defendant.

3d. The court erred in giving the first, second and third instructions given by the court.

4th. And erred in rendering judgment for the defendant.

*Lackey & Stayton,* for plaintiff in error.

*F. E. Macmanus,* for defendant in error.

WALKER, COMMISSIONER.— Notwithstanding the incompleteness of the record in this case, for the want of a statement of facts or bill of exceptions, the errors complained of are such as will authorize their revision. As a general rule, it is well settled that the supreme court will not revise the charge of the court below where there is no statement of facts. Birge v. Wanhop, 23 Tex., 441; Fulgham v. Bendy, 23 Tex., 65; 4 Tex., 235; 20 Tex., 7; 11 Tex., 649. In Fulgham v. Bendy, it was said that it will seldom happen that a case can be presented in which errors in the charge can be revised, without a statement of facts showing the relevancy and importance of the matter sought to be revised. But in Galbraith v. Templeton, 20 Tex., 45, the court revised the ruling of the court below in the rejection of evidence on a bill of exceptions, although there was no statement of facts; the evidence going to the whole defense. And in Luckett v. Townsend, 3 Tex., 119, where there was no statement of facts, it was held that there was no necessity for it in that case, because it appeared from the admissions in the pleadings that the verdict was wrong:

The rule and the exception was stated in Bast v. Alford, 22 Tex., 399, thus: "It is the well established rule of this court, that the charge of the judge below will not be revised, unless there be a statement of facts in the record; except the pleadings contain matter which shows the charge to be necessarily erroneous. In this case the petition set forth a cause of action, alleging as the basis of it a contract of partnership; the answer confessed and avoided it by the allegation of certain facts connected with its formation and consummation; and the charge of the court instructed the jury that the answer thus made, if substantiated by evidence, was a bar to the action. Under this charge the jury decided that issue; the special finding of the jury upon it relieves the subject from doubt as to whether the charge referred to was merely abstract, as

considered with reference to the evidence before the jury, or as to whether they were influenced in their action by that portion of the charge.

If the charge of the judge was erroneous, it is apparent from the finding by the jury of the special fact in their verdict, that the contract of partnership sued on was illegal, that they did not consider further the evidence before them in support of the plaintiff's cause of action. If the court erred in its instruction, this court cannot say that the plaintiff may not have been injured thereby; for no evidence which he may have adduced to the jury, showing an indebtedness on partnership account, could have availed to give him a verdict for any part thereof.

The first assignment of error, that the court erred in setting aside the report of the auditor, is not supported by anything in the record, from which it can be seen whether the action of the court was correct or not. The grounds of exception which were taken to the report were quite comprehensive. The report objected to embraced seventy-five pages of the transcript. There is no bill of exceptions, nor does it otherwise appear in the record, upon what ground the court acted in sustaining the motion to reject the report; it may have been done upon proof of some fact or facts under the motion, well warranting the ruling complained of. Under an assignment of error so general as this, the supreme court will not be required to determine whether this voluminous report was or was not obnoxious to any of the objections which were made to it, unless the objectionable matter should be specifically pointed out, and should be patent on the face of the report, or else that the grounds of action taken by the court below are preserved for inspection by a proper bill of exceptions.

The second and third assignments of error, that the court erred in overruling plaintiff's exceptions to defendant's answer, and in giving the first, second and third

sections of the charge, present sufficiently the same matter, and may be considered together.

Whether the contract of partnership, at the time it was formed and entered upon by the parties, was illegal and void as against public policy, is not necessarily the controlling question; but the true inquiry is, whether a party to that contract is liable or not, in an action against him, brought by his former partner, to recover from him his share of the proceeds of the partnership. In the case of De Leon v. Trevino, 49 Tex., 89, it was held, that although a contract may be illegal, it does not follow that it is illegal or immoral for the parties to it, after its completion, to fairly settle and adjust the profits and losses which have resulted from it. That the vice of the contract does not enter into such settlement. The discrimination made by Chief Justice Moore, in the opinion which he rendered in that case, between refusing relief to maintain and give effect to the original obnoxious contract, and of granting relief to sustain a subsequent contract, though collateral to it, after the complete consummation of that which was illegal, seems on principle and authority to be applicable to cases of a like character, where the plaintiff seeks to enforce his remedy at law, and the defendant refuses to make such voluntary settlement. Quoting further from the opinion of the Chief Justice, in the case of Brooks v. Martin, on a bill of equity by one partner against the other, to set aside a contract of sale of his interest in the partnership venture, the supreme court of the United States held, that "after a partnership contract confessedly against public policy has been carried out, and money contributed by one of the parties has passed into other forms, the results of the contemplated operation completed, a partner in whose hands the profits are, cannot refuse to account for and divide them, on the ground of the illegal character of the original contract." 2 Wall., 70. Other cases equally pertinent to the question are

cited in that opinion, to which I will now refer without further quotation, viz.: The Planters' Bank *v.* The Union Bank, 16 Wall., 483; Sharp *v.* Taylor, 2 Phillips' Ch., 801; Faikney *v.* Reynows, 4 Burr., 2070; Petrie *v.* Hannay, 3 Term, 418. See also Lewis *v.* Alexander, 51 Tex., 590, and the authorities there cited, for the proposition stated in the opinion, that "the courts are not inclined to extend the rule of law which refuses to lend its aid to either of the parties to an illegal contract, beyond the immediate parties, or subject matter of the contract itself."

It may well be questioned, whether the contract of partnership itself, as the same is alleged to have been made, by defendant's plea, was an illegal contract, as being against public policy. The citizens of the several states embraced within the government *de facto* (8 Wall., 9; 6 Wall., 13) of the Confederate States of America, were subject to the dominion and sovereign will of that government; under its laws the adult population were nearly all subject to either civil or military duty, and were required to contribute their aid in support of the war, both by such personal services, and by the enforced payment of taxes in money, and by payment of produce in kind. The illegality specified in this contract consists in a partnership formed, whereby the parties were to substitute mechanical work and materials to the service and use of the government, in lieu of military services. In a general and comprehensive sense of rendering aid to the war then being waged with the United States, it might be said that every citizen, more or less, within the limits of Texas, was thus aiding in the maintenance of the so-called rebellion, and in that sense the current, every-day contracts relating to the business of the civil and social life of all the inhabitants of the state, would have been subject to be classed as illegal contracts, unless limited by some principle or rule which shall discriminate and determine the special class which would, in a more restricted

and proper sense, contravene public policy, as applied to the existing condition of things within the limits of the Confederate States.

The opinion of Chief Justice Roberts, in Alexander v. Lewis, 47 Tex., 490, is suggestive of the distinction that may properly be made in respect to contracts which were made during the war with specific reference to direct aid to be given in the actual prosecution of hostilities, and in respect to such others as might be made in the course of the ordinary transactions of social life, and commercial business even, where they in their tendency and consequences, would, by supplying the necessary wants of the inhabitants of Texas, indirectly aid in maintaining the Confederacy, and thereby encourage the prosecution of the war. The amended plea, in the case of Alexander v. Lewis, *supra*, which was the subject of the remarks made upon it by Chief Justice Roberts, elicited the opinion, that the facts stated in it, under the decisions of the supreme court of the United States, and of our own state (7 Wall., 700; 12 Wall., 342; 36 Tex., 602), were sufficient to show the illegality of the contract. The contract referred to involved an undertaking by the party making it, to bring back from Mexico, in lieu of cotton transported thither, "military stores, etc., to be used in the war against the United States." But the chief justice proceeded to add, "there has been no effort in this case to investigate and bring to light the facts relating to the operations of the military board practically, or the objects of its creation, or to draw any distinction between the importation of cotton cards (which was the expressed object of this partnership), and the importation of military stores, and therefore, in this case, there is no reason for examining into the grounds of the decisions upon this subject that have been here cited."

The implication from the opinion is, that the grounds of the decisions which have been made upon questions of

·this kind, growing out of the late civil war, are not necessarily common to all contracts which may in any way, however indirectly, affect prejudicially the general public policy of the United States, to subdue to allegiance the inhabitants of the states in hostility to it.

We rest our conclusion in the case before us, however, upon the question first discussed, and it is not necessary to decide beyond the point which is there involved.

We are of the opinion that the court erred in overruling the plaintiff's exceptions to the defendant's plea, and in the charge given to the jury, and that the judgment of the court below ought to be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

[Opinion delivered March 11, 1881.]