Kneiss agt. Seligman.

## SUPREME COURT.

### KNEISS agt. SELIGMAN.

The purchase money for goods, merchandise. &c., can be recovered, where the seller knew they were intended to be used by the purchaser for an illegal and unlawful purpose, in violation of a statute (against the excise law, &c.) where the sale is made in the ordinary course of trade, and the illegal design does not enter into and form a part of the contract, and where there is no act done by the seller in aid of such unlawful design beyond the bare sale.

In other words. the bare knowledge of the seller, that the purchaser intends to use the property unlawfully, is not sufficient to vitiate the contract of sale and render it illegal and void.

*Wayne Circuit, April,* 1850.

JOHN T. MACKENZIE, *for Plaintiff.*

WM. VAN MARTER, *for Defendant.*

SELDEN, Justice.—The complaint in this action alleges that the defendant is indebted to the plaintiff for goods, wares, merchandises, groceries and lumber, sold and delivered generally, without any specification of the property sold. The plaintiff, however, has furnished a bill of particulars, containing a large number of charges for beer sold and delivered.

The answer sets up that the beer, for which the plaintiff seeks to recover, was sold by the plaintiff to the defendant with full knowledge that the latter intended to sell the same at retail without license, and in violation of the excise laws, and relies upon this as a defence to that part of the action.

To this answer the plaintiff has demurred specifying the causes of demurrer.

It is well settled that the only effect of a bill of particulars is to limit the testimony on the trial to the items contained in the bill and that a party can not plead or answer to such a bill.

The answer must be to the previous pleading and not to the bill of particulars which forms no part of the record (Starkweather vs. Kittle, 17 *Wend.* 20; Anon. 19 *Wend.* 226 and note; Dibble vs. Kempshall, 2 *Hill,* 124).

The Code has not changed the law in this respect; but this objection to the answer can not be noticed here, for the reason that it is not specified as one of the causes of demurrer. By section 153 of the Code, a plaintiff in demurring to an answer is required to state the grounds of the demurrer; and although not expressly said, it is necessarily to be inferred that he is to be confined to the objections thus specifically taken.

It becomes necessary therefore, to examine the main question presented, which is, whether one who sells goods to another with knowledge that the vendee intends to convert them to an unlawful use, as in this case, spirituous liquors to be sold at retail without license, can maintain an action for the purchase money.

Now it is abundantly settled and there is no necessity for citing authorities to prove that a contract for the commission or performance, or which contemplates the commission, or performance of any crime or wrongful act, or act prohibited by law, is void and can not be enforced. But the principle contended for here goes much farther.

It is not claimed that the contract made by the plaintiff was in itself unlawful, or that it provided in any way for the doing of any wrongful act. The sale by the plaintiff was, so far as appears in the ordinary course of business, and in itself considered such as he had a perfect right to make; and it was no part of the contract of sale that the property should be used for any unlawful purpose, nor did the fact that such use of it was contemplated constitute any portion of the inducement which led the plaintiff to sell. But he knew that the purchaser did entertain the design at the time of the purchase, of reselling the property in violation of the excise laws. Did this knowledge by the plaintiff of the vendee's intention vitiate the contract of sale and render it illegal and void?

Before proceeding to the examination of the authorities upon this question, I may remark that the defendant is here setting up his own turpitude in bar of the plaintiff's claim. He does not deny that he has had the property and used it for his own benefit, but says that at the time he purchased he intended to use the

Kneiss agt. Seligman.

goods in an unlawful manner, which the plaintiff knew, and therefore he is not bound to pay.

This, however, is no objection to the defence, if the case falls within the settled rule in obedience to which courts have universally refused to lend their aid to enable one party to an unlawful contract to enforce it against another, as between the parties to such a contract, no matter to what extent one has obtained the advantage, the law will afford no aid to the other; and this rule rests upon the soundest principles of public policy. The question here is whether this is such a case.

It is not alleged that the design of appropriating this property to an unlawful use was actually carried out, but only that the defendant intended so to appropriate it; an intention which, for aught that appears, he may have abandoned the day after the purchase.

Now it can hardly fail to strike any one, that the rule here insisted upon would afford some facilities for roguery. A party after having obtained possession of property to a large amount under an avowed intent to make some use of it which the law prohibits, may avail himself of *locus penitentia*, converting the property to a lawful use, and then protect himself by this defence against liability for the purchase money; and this ultimate design may have been secretly harbored from the beginning without the possibility of proof.

It will also occur to any one whose attention is turned to this subject, that while the intention to commit a crime, or to do an unlawful act, when nothing is done to carry that intention into effect, is not a crime, nor in any way punishable, yet the rule contended for here would impose a severe penalty or forfeiture upon one who did not even participate in the unlawful design, but simply knew of it; and that too for the benefit of the only party who entertained the wrongful intent.

In this view the proposition would seem to be repugnant to our common sense; and yet there are authorities which perhaps may be considered as countenancing the doctrine. It will be necessary, therefore, to examine the authorities bearing upon the question somewhat critically.

One of the earliest cases in which this question, or one analagous to it arose, is that of Falkney vs. Reynous, (4 *Burr.* 2069). There the plaintiff and one of the defendants had been jointly concerned in certain stockjobbing transactions which were illegal and prohibited by act of parliament.

The plaintiff had advanced $3000 in compromising and closing up these transactions, for one half of which the defendants had given their bond, upon which the action was brought. These facts were pleaded by the defendants and upon the demurrer the court held it no defence. Lord Mansfield, in speaking of the giving of the bond by the defendant says, "This is not prohibited. He is not concerned *in the use which the other makes of the money;* he may apply it as he thinks proper. But certainly this is a fair, honest transaction *between these two.*"

The next case, I think, it necessary to notice is that of Holman vs. Johnson (1 *Cowp.*, 341). The plaintiff Holman, a resident of Dunkirk, had sold to the order of the defendant a quantity of tea, *knowing* that it was intended to be smuggled by him into England; but the plaintiff himself had no concern in the smuggling, but merely sold the tea in the ordinary course of business. The action was brought for the price of the tea, and the above facts appearing, the question was whether the plaintiff could recover. It was held that he could. Lord Mansfield delivers the opinion in this case also. He says, speaking of the sale of the tea, " The contract is complete and nothing is left to be done. The seller indeed *knows* what the buyer is going to do with the goods, *but has no concern in the transaction itself.* It is not a bargain to be paid in case the vendor should succeed in landing the goods, but the interest of the vendor is totally at an end, and his contract complete by the delivery of the goods at Dunkirk."

These two cases fully bear out the position taken by the plaintiff here; that where the contract is honest and lawful as between the parties themselves, and does not, *per se,* provide for any thing contrary to law, it will not be vitiated because one of the parties contemplates by some further use of the property to violate some law, and that is known to the other party. The last case especially, is undistinguishable in principle from the present.

Kneiss agt. Seligman.

But there are some later cases which are supposed to have established a somewhat different rule. The case of Biggs vs. Lawrence (3 *D. & E.* 454), Clagor vs. Penaluna (4 *D. & E.* 466), and Waynell vs. Reed (5 *D. & E.* 599), were all cases in which the plaintiff had sold goods abroad, knowing that they were to be smuggled into England; and so far were like the case of Holman vs. Johnson, above cited; but they differed from that case in this—that in each of these three cases the plaintiff had done some act in addition to the sale, which went in aid and furtherance of the defendant's design to violate the revenue laws, such as packing the goods in a peculiar manner to facilitate their being smuggled; and for this reason alone it was held in these cases that the plaintiff could not recover.

In the last case, Waymell vs. Reed, Buller, J. states the distinction in the clearest terms. He says, "In Holman vs. Johnson, the seller did not assist the buyer in the smuggling; he merely sold the goods in the common and ordinary course of trade. But this case *does not rest* merely on the circumstance of *the plaintiff's knowledge* of the use intended to be made of the goods, for he actually assisted the defendant in the act of smuggling by packing the goods up in a manner most convenient for that purpose." These cases, therefore, instead of impairing the authority of the case of Holman vs. Johnson, go to fortify and sustain it.

The case of Lightfoot and al. vs. Tenant, in the English common pleas (*Bos. & Pul.* 551), is one of the earliest cases in which any thing has been said having a tendency to establish the position taken by the defendant here, but if closely examined that case will not be found to support the doctrine. That was a motion for judgment non obstante veredicto. The opinion of Ch. J. Eyre was not given there with his accustomed clearness and precision. He does, indeed, seem to argue that bare knowledge by the vendor that the vendee intended to make a prohibited use of the goods would defeat a recovery for the price, yet he subsequently puts the decision most distinctly upon the ground that the jury had found that the wrongful use to be made of the goods, entered into and formed part of the original contract of sale. He

says, "But the jury having found for the plea, the court can not say that the plaintiff had nothing to do with the future destination of the goods, unless it was impossible to state a case in which they could have any thing to do with it.   I think it was not disputed that if the plaintiff's contract extended to the future destination of the goods, such a contract would be void.   It seems, therefore, hardly necessary to enter into an examination of the four cases which were cited from Cowper and the Term Reports." The four cases here alluded to were Holman v. Johnson, and the three cases above cited from D. & E., and this extract, therefore, conclusively proves that the decision was put upon grounds entirely distinct from those cases, and was not intended to impair their force or authority.   It may be difficult to reconcile all that was said by the learned chief justice in this case with the principle adopted in Holman v. Johnson, but there is nothing in the *point decided* here which is inconsistent with that case.

It may be well before leaving this case of Lightfoot v. Tenant to note that the plea which had been found by the jury for the defendant, averred that the illegal design in regard to the destination of the goods had been actually carried out by the vendee.

The next case having a direct bearing upon the question, is, that of Langton and others v. Hughes and al. in the Court of Kings Bench in England (1 *Maule & Sel.* 593), and as this is one of the strongest cases in favor of the doctrine contended for by the defendant, it will be necessary to give it a careful examination.   The case was this: a statute of 42 Geo. 3, prohibiting brewers from using any thing but malt and hops in the brewing of beer; a subsequent statute (51 *George*, 3), prohibited druggists from selling to brewers certain articles used by them in contravention of the previous statute.   The plaintiffs, who were druggists, after the first of these statutes, but before the last, had sold to the defendants, who were brewers, certain drugs, knowing that they were to be used by the defendants in their business, contrary to the provision of the prior statute, and this action was brought to recover the price of the articles so sold.   It was conceded that the statute of 51 Geo. 3, having been passed after the

sale, did not affect the case, and yet the court held that the plaintiff could not recover.

Now it would indeed seem that the court in deciding this case must have adopted the principle contended for here by the defendant. But the case has some peculiar features and does not appear to me to have been very well considered.

In the first place, although the decision appears to come directly in conflict with the principle of Holman v. Johnson, a leading case, yet that case is not referred to either by the counsel or the court. Two of the judges, Ellenborough and Le Blanc refer, not to the cases themselves, but to the principles of the cases of Biggs v. Lawrence, and the other cases in D. & E., cited above, as sustaining their decision without adverting to the distinction taken in those very cases, between one who aids and assists the vendee in carrying out his illegal design and one who barely knows of the existence of such design but does nothing in furtherance of it; and Bayley, Justice, cites Lightfoot v. Tenant as an authority for the doctrine of this case; while, as I have before shown that case decided nothing inconsistent with the case of Holman v. Johnson.

Again, a close examination of the opinion given in the case under consideration will show, I think, a little hesitation in the minds of the Judges, whether to rest their decision upon the statutes or upon the principles of the common law. Lord Ellenborough, in speaking of the act of 42 Geo. 3, says, "There is a distinct prohibition in the act against *causing* or *procuring* to be mixed any ingredient except malt and hops, and a person who sells drugs with a knowledge that they are meant to be mixed, may be said to cause or procure *quantum in illo* the drugs to be mixed." And Le Blanc, Justice, after stating the question, says, " That depends upon the provisions of 42 Geo. 3 *coupling them* in their construction with those of 51 Geo. 3." So while one of those judges was endeavoring to make out that the act of the plaintiff was a direct violation of the first statute, the other seemed to think that the latter act, although passed after the sale, could in some way be brought to bear upon the case.

Upon the whole, I think it will be apparent to any one who reads this case attentively in connection with the previous cases on the subject, that the decision here was really produced by the statute of 51 Geo. 3. Had the sale been made after that act was passed, the plaintiff could not have recovered; and the case was so clearly within the mischief intended to be prevented that the act was suffered, perhaps unconsciously, to control the decision. At all events I can not consider this case as overruling that of Holman v. Johnson, confirmed as the latter had been by the subsequent case to which I have referred.

We come, then, to two later cases in the English courts which are supposed to sustain the defence here. The first of these is the case of Carman v. Bryce (3 *Barn. & Ald.* 179). There the defendant had lent money to a firm which afterwards became bankrupt for the purpose of paying a balance due upon certain illegal stockjobbing transactions, and which had been applied to that object. The defendant having afterwards received money belonging to the bankrupts, the assignees brought their action to recover those moneys, and it was held that the defendant had no right to apply them in payment of his demand for the money loaned. The other case is that of McKinnell v. Robinson (3 *Mees. & Wels.* 434). That was an action of assumpsit for money lent, &c. The defendant pleaded that the money was lent in a certain common gambling room, *for the purpose* of the defendant's illegally playing and gaming therewith, and on demurrer the plea was held to be good.

Now, at first view, these cases might appear to go the length contended for by the defendant here. But it will be observed that they are distinguishable from the case before us, as well as from the case of Holman v. Johnson, in this at least. that in both the cases under review the illegal use was the express purpose for which the money was lent, and this circumstance is noticed and relied upon by the court in giving its opinion in both cases.

In the case of Carman v. Bryce, Abbott. Ch. J. says: "It will be recollected that I am speaking of a case wherein the means were furnished with a full knowledge of the object to which they

were to be applied, *and for the express purpose of accomplishing that object*," and in the case of McKinnell vs. Robinson, Lord Abinger lays down the doctrine thus: "This principle is that the repayment of money lent, *for the express purpose* of accomplishing an illegal object, can not be enforced." This language used in both these cases "for the express purpose" is equivalent to saying that the motive and object of the lender in loaning the money was that it should be applied to the unlawful use. He being thus a participator in the unlawful act, would not of course be permitted upon the principle of any of the cases to recover. These cases, therefore, do not seem to me to go far enough to sustain the defence set up here.

The defendant's counsel has cited two cases from our own courts upon which he relies.

The first is that of Ruckman vs. Bryan (3 *Denio*, 340). The marginal note of that case is as follows: " Money knowingly lent to be staked on the event of a horse race, can not be recovered back;" but on looking into the facts we find that the plaintiff himself made the bet of $3000, in which he allowed the defendant to take an interest of $600 and loaned the latter the money for his share.

The case clearly does not bear out the note, although the latter may be correct if the words " to be staked" are understood to mean that the motive and object of the lender in making the loan was that it should be so staked. But upon the case itself, it should seem that there could be no doubt. The plaintiff was himself not only a participator but the principal in the illegal transaction; he loaned the money to be used in carrying out, not a contract to which he was not a party, like many of the cases, but his own personal contract. No recovery could be had in such a case without overruling all the authorities upon the subject.

The other case is that of Morgan vs. Goff (5 *Denio*, 364). The money here was not loaned to be used by the defendant upon his own account, but was sent to the defendant to be by him used in betting upon the election *for the plaintiff*. As in the last case, therefore, the plaintiff was himself the principal in the illegal

design. The contract between him and the defendant was, that the latter should take the money and appropriate it for the benefit of the plaintiff to a purpose prohibited by law. The express contract therefore between the parties, was clearly tainted with turpitude, and had the suit been brought to enforce that contract the case would have been too clear for argument. 'The action, however was founded upon an implied undertaking to return money which the defendant had actually received belonging to the plaintiff. But the court held in substance that the law would not raise by implication a contract to refund the money under the circumstances. This case, although in some respects peculiar and new, has no direct bearing upon the question involved here. I see nothing, therefore, in either of the cases decided in our own courts which can aid us in coming to a correct conclusion in this. It was said upon the argument that the Supreme Court of Vermont had lately passed upon the question, and held as contended for by the defendant here. As I have not been able to lay my hand upon that authority I can say nothing in regard to it. There may have been something in that case to distinguish it from the one before us.

My conclusion from this review of the cases is, that there is no case which has been brought to my notice with the exception of that of Langton vs. Hughes, which goes the length necessary to sustain this defence; and that case comes in direct conflict, not only with the case of Holman v. Johnson, but with the spirit of many other cases. and ought not to be followed.

The doctrine established by the authorities to which I have referred, and others upon the subject, I hold to be this: That where a party who sells goods or advances money to another with knowledge of a design on the part of the latter to put the goods or money to an unlawful use, does any act whatever beyond the bare sale, &c. in aid or furtherance of the unlawful object, he can not recover; or if the illegal use to be made of the goods or money enters into the contract, and forms the motive or inducement in the mind of the vendor or lender to the sale or loan, then he can not recover. The latter proposition may, however,

require to be qualified by the addition provided the goods or money are actually used to carry out the contemplated design, as no case has arisen in which this distinction has been insisted upon, although it was, perhaps, involved and virtually decided in the case of McKinnell vs. Robinson (3 *Mees. and Wels.* 434,) before cited.

But I think it is not established, and will never become the settled law, that bare knowledge on the part of a vendor that the vendee intends to put the goods to an illegal use, which intention may or may not be followed up, will vitiate the sale and deprive the party of all remedy for the purchase money. Such a doctrine would be repugnant to all the reasoning upon which the princi= ples of our criminal code in regard to the punishment of prin- cipals and accessories in crime are founded, reasoning which is equally applicable to penalties of the kind insisted upon here. It would be to punish a party as accessory to a wrong when no wrong may have been committed.

The doctrine relied upon by the defendant does not reach this case, because here the illegal design does not enter into or form any part of the plaintiff's contract, nor has he done any thing to aid in its accomplishment.

Judgment for the plaintiff upon the demurrer, with leave to the defendant to amend within twenty days upon payment of costs.