47  481
79  603

## C. C. ALEXANDER'S EXECUTORS V. CHARLES LEWIS.

1. PARTNERSHIP—DEATH OF MEMBER.—It is competent for the members of a partnership to provide, by agreement, for its continuance after the death of one or more of its members; parties dealing with such partnership would be chargeable with notice of the death and of the terms of the agreement for continuation of the firm, so far as affects the estate of the deceased member.

2. SAME.—As by operation of law a partnership is dissolved by the death of any of its members, any agreement taking the partnership out of this rule must be shown distinctly and by evidence satisfactory.

3. SAME.—An agreement between two partners for the continuance of their partnership after the death of one, would not be proof of its existence after a new partnership was formed by taking into the firm another member with whom no such agreement was had.

4. SURVIVING PARTNER—ACTS OF EXECUTOR.—The acts of the survivor in furtherance of the partnership business, with the aid and consent of the executors of the deceased member, would not render the general assets of the estate of the deceased liable for the debts incurred in the partnership after the death of such member.

5. ILLEGAL CONTRACT.—"That the consideration of a draft was cotton which the drawer exported for the payer, under a contract with the Texas Military Board, in 1864, for the introduction of military stores, &c., into Texas, and that plaintiff delivered said cotton with full knowledge of the illegal business in which the drawer was engaged and with intent to advance the purpose thereof," is a good defense in a suit upon such draft brought by the payee and holder.

6. WITNESS—PARTIES TESTIFYING.—In a suit against executors and another, to fix a liability against both, the defendant cannot be called by his co-defendant, the executor, touching matters inhibited in the statute. (Paschal's Dig., art. 6827.)

7. IMPEACHING WITNESS.—The depositions taken in another suit of a witness examined, cannot be read in evidence to impeach such witness, unless, on his examination, his attention previously had been called to his declaration so sought to be introduced.

31

8. PRACTICE—NON EST FACTUM.—The exclusion of a plea of *non est factum*, where there remained a plea denying the partnership alleged as maker of the draft sued on, is not such error as will require revision. The denial of the partnership put plaintiff upon proof of the execution as against defendant.

APPEAL from Lamar. Tried below before the Hon. W. H. Andrews.

This suit was commenced by Charles Lewis, appellee, on the 24th of October, 1866, against Mary A. Alexander, executrix, and Simon B. Allen, Samuel A. Roberts, and John N. Fraley, executors of the last will and testament of C. C. Alexander, deceased, and Josephine Alexander, executrix of A. M. Alexander, deceased, late partners, doing business under the name and style of A. M. & C. C. Alexander, and A. S. Kottwitz and William Cloud, who, with said A. M. Alexander, constituted the firm of A. S. Kottwitz & Co. The suit was upon a draft drawn by said A.M. & C. C. Alexander on said A. M. & C. C. Alexander, dated 2d of May, 1865, and payable to the order of said Charles Lewis sixty days after date, for $8,529.85, and indorsed by said A. S. Kottwitz & Co., who wrote the name of said firm across the face of said draft, and, by an amended petition, filed 27th of December, 1867, W. B. Knox was made a defendant as a partner of said A. M. & C. C. Alexander.

The case was tried by the District Court, on the 31st of August, 1869, when the court sustained the demurrer of the defendants, dismissed the suit, and rendered judgment against plaintiff for costs; from which judgment plaintiff appealed to this court, when the judgment of the District Court was reversed and the cause remanded on the 17th of April, 1871. The case is reported in 34 Tex., 608.

This cause was again tried in the District Court, on the 6th of January, 1872, when judgment was rendered for plaintiff for the sum of $12,971.02, with interest at eight per cent. per annum, and costs of suit against the executrix and executors of C. C. Alexander, and the administrator *de bonis non* of A.

M. Alexander (who was made a party pending suit) and W. B. Knox. The court, being advised that the estate of C. C. Alexander was being administered out of court, ordered that execution be issued against the estate of C. C. Alexander, as well as defendant Knox, and that, as to the estate of A. M. Alexander, the judgment be certified to the District Court, where administration was pending, for observance and payment.

From this judgment the executors of C. C. Alexander appealed.

The facts are stated in the opinion.

*W. B. Wright*, and *Hancock, West & North*, for appellants, cited, 1 Greenl. Ev., secs. 462, 463; Gould *v.* Norfolk Lead Co., 9 Cush., 338; Com. *v.* Hawkins, 3 Gray, 463; Tucker *v.* Welsh, 17 Mass., 160; Titus *v.* Ash, 4 Foster, 319; Cook *v.* Brown, 34 N. H., 460; Hedge *v.* Clapp, 22 Conn., 622; Robinson *v.* Hanley, 31 Vt., 443; Kay *v.* Fredrigal, 3 Barr, 221; Paschal's Dig., art. 1442; Tarpley *v.* Poage, 2 Tex., 146; Parr *v.* Johnston, 15 Tex., 297; Barnett *v.* Logue, 29 Tex., 289; Compton *v.* Western Stage Co., 25 Tex. Supp., 67; Stacy *v.* Ross, 27 Tex., 5; Wells *v.* Moore, 15 Tex., 522; Lewis *v.* Alexander, 34 Tex., 608; Kottwitz *v.* Alexander, 34 Tex., 689; Whitis *v.* Polk, 36 Tex., 602; Coppell *v.* Hall, 7 Wall., 543; Hanauer *v.* Doane, 12 Wall., 342; Thomas *v.* City of Richmond, 12 Wall., 349; Bishop *v.* Honey, 34 Tex., 252; Kottwitz *v.* Alexander, 34 Tex., 689; Texas *v.* White, 7 Wall., 700; Lightfoot *v.* Tenant, 1 Bos. and Pull., 551; Langton *v.* Hughes, 1 Maule and Selwin, 593; Roquemore *v.* Alloway, 33 Tex., 461; Converse *v.* Miller, 33 Tex., 216; U. S. *v.* Gurney, 4 Cr., 341; U. S. *v.* Linn, 1 How., 104; U. S. *v.* Beard, 5 McLean, 441; Stephens on Pl., 143, 144; Arrington *v.* Sneed, 18 Tex., 135; Aubert *v.* Maze, 2 Bos. and Pull., 371; Booth *v.* Hodgson, 6 Term, 405; Knowles *v.* Haughton, 11 Ves., 405; Bartle *v.* Coleman, 4 Pet., 184; Burwell *v.* Mandeville, 2 How., 560; Bissett on Part., 83;

Troubat on Part., 533; 3 Kent, 58; Cross *v.* Everts, 28 Tex., 524; Horn *v.* Lockhart, 17 Wall., 571; Lasere *v.* Rocherau, 17 Wall., 437; University *v.* Finch, 18 Wall., 106; The Confederate Note Case, 19 Wall., 558; McQuiddy *v.* Ware, 20 Wall., 14; U. S. *v.* Insurance Companies, 22 Wall., 99; Fretz *v.* Stover, 22 Wall., 198; Mathews *v.* McStea, 1 Otto, 7.

*A. M. Jackson* and *E. M. Pease,* for appellee, cited Jordan *v.* The State, 10 Tex., 501; Bigham & McCall *v.* Carr, 21 Tex., 147; Weir *v.* McGee, 25 Tex. Supp., 32; 1 Greenl. Ev., secs. 113, 462; 2 Cowen and Hill's Notes, 760; Chambers *v.* Miller, 9 Tex., 237: Kneiss *v.* Seligman, 8 Barb., (N. Y. R.,) 449; 3 Kent, 27; Story on Part., secs. 84, 86, 139, 196, 201; 2 Greenl. Ev., secs. 481, 484.

ROBERTS, CHIEF JUSTICE.—The principal questions in this case, as it was presented to the jury by the pleadings, and by the evidence applicable to the pleadings, that were held to be good, arise upon the charge of the court, which is as follows, to wit:

"The first charge is: 'The court instructs you, that, if you believe from the evidence, that A. M. & C. C. Alexander were partners in a cotton enterprise, and that it was agreed between them that, in the event of the death of either of them before said enterprise should be completed, then the survivor should carry it on and complete it the same as if both were living, and that A. M. Alexander, as such survivor, did execute, by his agent, the instrument sued on in fulfillment of said enterprise, then you will find for the plaintiff, against the administrator of A. M. Alexander and the executrix and executors of C. C. Alexander, the amount of this instrument, with interest at eight per cent. per annum from its maturity to date, in dollars and cents.'

"The second charge is: 'If you believe from the evidence, that prior to and at the death of C. C. Alexander, said enterprise did exist, and that A. M. Alexander did in fact

continue to execute said enterprise in due course, the same as before, with acquiescence or consent of the executors and executrix of C. C. Alexander, and that said instrument was executed in furtherance of said enterprise, then you will find as directed.'

" The sixth charge is: ' You will find upon all the propositions here submitted to you, according to the general rule in civil causes, that the preponderance of the testimony justifies the jury in finding for the party in whose favor the evidence preponderates.' "

The first charge is in accordance with the general current of authority. (Burwell *v.* Mandeville's Ex'r, 2 How., 576, (U. S. R.;) Troubat on Part., secs. 532, 533 ; 3 Kent's Comm., note *a*, p. 64.)

Mr. Parsons seems to regard it as a stipulation in the articles of partnership for the formation of a new partnership, which may or may not be acceded to by the parties concerned, after the death of one of the partners, rather than a continuation of the old partnership. (Pars. on Part., 2d ed., marg. p. 438, 439.)

Justice Story, in the case quoted from 2 Howard, 576, says: " By the general rule of law, every partnership is dissolved by the death of one of the partners. It is true that it is competent for the partners to provide by agreement for the continuance of the partnership after such death; but then it takes place in virtue of such agreement only, as the act of the parties, and not by mere operation of law." " But then in each case the agreement or authority must be clearly made out, and third persons, having notice of the death, are bound to inquire how far the agreement or authority to continue it extends, and what funds it binds; and if they trust the surviving partner beyond the reach of such agreement or authority or fund, it is their own fault," &c.

Neither in the pleading nor in the evidence did there seem to be any regard paid to the distinction here taken, as to whether the whole estate of C. C. Alexander in the hands of

his executors was made, by the agreement for the contin-
uance of the partnership, responsible for the debts contracted
by the surviving partners, or only such of his effects as were
embarked in this particular enterprise of transporting cotton
to Mexico for sale.

If the responsibility, under the agreement, extended only
to the effects put into this enterprise, the remedy should have
been to reach such effects, or the proceeds of them in the
hands of the executors, and not to obtain a general judgment
against them, binding the land and other effects of said estate
not embarked in this enterprise. Had there been special
exception to the allegation of plaintiff in setting up this
agreement for the continuance of the partnership, the court
might have required such an amendment as would have made
it more certain, whether the agreement extended to fixing
a responsibility upon all of the effects, or only upon those
embraced in the enterprise.

There was no charge given upon this subject, calculated
to present any such distinction.

The counsel for the executors asked the court to charge as
follows, to wit:

"If you believe from the evidence that C. C. Alexander
was dead at the time the draft sued on was executed and
delivered to plaintiff, then you will find in favor of the
executors of C. C. Alexander, unless the plaintiff has proved,
by the clearest and most unambiguous language, showing in
the most positive manner an intention on the part of C. C.
Alexander to render his general assets liable for debts con-
tracted by said firm of A. M. & C. C. Alexander after his
death."

This charge was designed to raise this distinction on the
trial, and have the jury to pass upon it. The rule laid down
in the books as to such an agreement is, that being an excep-
tion to a general rule in the law of partnership, it must be so
certainly expressed in definite terms, as that, upon a fair
construction of it, the intention is plainly indicated that the

party entering into it did intend to bind his estate generally; otherwise it would be presumed that he intended to bind his effects only embarked in the business of the partnership. (See authorities already cited.)

The allegations in the amended petition concerning the agreement are, that the enterprise for which the partnership was formed, as between the two Alexanders, was an entirety, and that, while it was yet in full force, it was agreed and understood that it should not be dissolved by the death of either of the two brothers, but should be carried on by the survivor as if both were still living. These allegations were comprehensive enough to embrace an undertaking that, in carrying out this enterprise, whatever was done by the survivor should have the effect to bind the estate of the deceased, the same as though he had continued to live, and to participate in it. The charge, therefore, certainly should have been given as requested, if it had not been burdened with the expletives, requiring the agreement to be proved by "the clearest and most unambiguous" language, showing "in the most positive manner" the intention of C. C. Alexander, &c.

The true rule is, that the agreement should be alleged with clearness and certainty, so as to bring it safely within the exception to the general rule, that a partnership is dissolved by the death of one of the partners, which should be proved as alleged to the reasonable satisfaction of the jury, just as any other affirmative allegations, constituting a defense or cause of action in a civil cause.

The first charge of the court omits any recognition of the new partnership, formed in November, 1864, by A. M. & C. C. Alexander and W. B. Knox, set out in the amended petition, as follows, to wit:

"This contract, entered into by W. B. Knox, of the first part, and A. M. and C. C. Alexander, of the second part, witnesseth, that one third of a certain contract, * * * or the profits accruing therefrom, made by A. M. Alexander with the military board of Texas on the tenth day of October, 1864, for the

transporting and exporting of cotton to Mexico, and of importing cotton cards for said military board, is hereby transferred to the said W. B. Knox by A. M. & C. C. Alexander, on the following conditions, to wit: 'The said Knox binds himself to furnish A. M. & C. C. Alexander with twenty-five thousand dollars in specie, which shall be used in carrying out the aforesaid contract, and the said Alexanders bind themselves to furnish four thousand bales of cotton in northern and eastern Texas at five cents per pound and fifteen. thousand dollars in specie—the aforesaid amount of specie to be furnished within ——— days from date of this contract. It is agreed and understood that the aforesaid Knox is to be interested to the amount of one third of any and all contracts there may be made and entered into by the said A. M. and C. C. Alexander with the military board. * * * * *

"Given under our hands and scrawls for seals this twenty-sixth day of November, 1864.

"Witness:       A. M. ALEXANDER,     [SEAL.]
    Wm. Cloud.       C. C. ALEXANDER, ·    [SEAL.]
    A. Shrenke.      W. B. KNOX."      [SEAL.]

Said Knox was made a party, and alleged to have been one of the partners in the firm to whom the money was loaned to aid it in carrying out the enterprise in which it was engaged, for which the draft was executed to the plaintiff, and a recovery was sought and obtained against him jointly with the representatives of the other two members of said firm. It is not alleged that he was a party to the agreement for the continuance of the partnership, to take effect in the event of the death of one of the Alexanders. It is not perceived how there could be a valid agreement between only two of the three members of the firm. For if it had been continued any considerable length of time, new operations must have been undertaken, in the profits of which the executors of the deceased party would not have been entitled to their equal one-third share. In the absence of such an agreement on his part, upon the death of one of the Alex-

anders, the partnership would have been dissolved as to him as well as to the others. (Bissett on Part., marg. p. 83.) And if he and the survivor had continued in any new operations, beyond the acts necessary to wind up the old firm, it would have been in effect the formation of a new partnership between the survivors, whether it was entered into by formal articles of partnership or not.

The second charge of the court was clearly erroneous.

It assumed that the general assets of the estate of C. C. Alexander were subject to the payment of this draft, if "A. M. Alexander, as survivor, did, in fact, continue to execute said enterprise, the same in course as before, with the acquiescence or consent of the executrix and executors of C. C. Alexander, and said instrument was executed in furtherance of said enterprise," although there was no agreement for the continuance of the partnership, after the death of one of the partners. We cannot presume that C. C. Alexander did not have other effects not embraced in this enterprise. Indeed, his will showed that he had. His executors could not bind this property, by a participation in the business, after the death of their testator, though they might thereby have rendered themselves personally responsible. There was some evidence tending to show that John U. Fraley, one of the executors, did aid, to some extent, in carrying on the business of this enterprise, after the death of C. C. Alexander; and, therefore, this charge was not merely abstract and impertinent, but had reference sufficiently to the facts in proof to render it a material error in the case.

This draft sued on may have constituted such a liability against the survivor as would have entitled the plaintiff to the equitable remedy of following the assets of the partnership into the hands of the executors of C. C. Alexander, if there found, whether there was an agreement for the continuance of the partnership or not, or whether the business of the enterprise was continued, with the acquiescence and consent of the executors of C. C. Alexander, or not.

Another error, material to be noticed in reference to another trial of the case, is, in the ruling of the court, upon the exceptions of the plaintiff to that part of the answers of the defendants which set up the illegality of the draft on account of its consideration being "for services rendered, money loaned, and cotton sold by said Lewis to A. M. Alexander, with a full knowledge of the objects of the partnership, and with the intent to aid the purpose thereof;" it being further alleged that the object and purpose of the partnership were to carry out cotton to Mexico, and to bring back cotton cards, army stores, and munitions of war, under a contract with the military board of Texas, alleged to have been organized in aid of the Confederate States, in the war against the United States. And, in the last amended answer, it was alleged that C. C. Alexander made a contract with said military board, to transport cotton to Mexico, and bring back military stores, &c., to be used in the war against the United States, and associated with him A. M. Alexander, and had him appointed agent of the military board, and that the " consideration of said draft was cotton which the said A. M. Alexander exported for said plaintiff, under said contract with the military board, and that plaintiff delivered said cotton with full knowledge of the illegal business in which said A. M. Alexander was engaged, and with the intent to advance the purpose thereof."

There can be no question but that these allegations, if proved, were amply sufficient to establish the illegality of the transaction, according to the decisions of the Supreme Court of the United States and of this State, as previously made on that subject. (The State of Texas *v.* White, 7 Wall., 700; Hanauer *v.* Doane, 12 Wall., 342; Whitis *v.* Polk, 36 Tex., 602.)

It is contended by appellee that these allegations were not sufficient, because it is not alleged that the cotton sold was ever used for the said illegal purpose, or taken out of the State in pursuance to the purpose for which it came into the

hands of A. M. Alexander. The pleadings do not bear out this position, and if they did, the authorities cited do not seem to require it as essential in establishing the illegality of the transaction. There has been no effort in this case to investigate and bring to light the facts relating to the operations of the military board practically, or the objects of its creation, or to draw any distinction between the importation of cotton cards, (which was the expressed object of this partnership,) and the importation of military stores, and therefore, in this case, there is no reason for examining into the grounds of the decisions upon this subject that have been here cited.

The testimony of W. B. Knox was offered by the executors of C. C. Alexander, and excluded by the court upon the exceptions of plaintiff, that Knox is a party to the suit, and the executors will be affected by the result of the suit, &c.

Knox is a party defendant to this suit as a partner of the deceased Alexanders, and was directly interested with their representatives in defeating a recovery of the plaintiff. The question, whether his deposition was rightfully excluded, must depend upon the construction to be given to the act that will be found in the laws of the Twelfth Legislature, second session, chapter 104, page 109. The second section of that act is in the following words, viz: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court." (Paschal's Dig., art. 6827.)

His being a party is no objection to his evidence. (Paschal's Dig., art. 6826.)

It would seem that, as he is sued on a joint contract with the executors in the same suit, to allow him to give evidence for them in relation to transactions with or statements by their testator would place at great disadvantage the opposite party, Lewis, who would not, under the statute, be allowed to give

his testimony on the same or similar matters, in rebuttal. Such a result could hardly have been contemplated by the statute as permissible. But, under this rule, there was a small portion of the depositions of Knox relating to the time and length of the visit of C. C. Alexander, in November, 1876, to San Antonio, and to the absence of A. S. Kottwitz from San Antonio at that time, and perhaps some other facts that would not properly be embraced in the prohibition of the statute. Most of his testimony, however, was irrelevant to the issues presented to the jury, or related to transactions with or statements by the Alexanders.

The executors excepted to the ruling of the court in excluding the depositions of A. S. and S. Kottwitz, which had been taken in a suit between other parties, and which were offered in this case for the purpose of showing that these witnesses had made statements contradictory to their depositions, which the plaintiff had read in evidence.

The grounds of objection to this impeaching evidence were, that it was taken in a suit between other parties, and that no basis was laid for its introduction, by asking the witnesses. the proper questions about their statements, previously made, in the depositions offered to contradict them.

While there is a conflict of decisions on this question, in the courts of the different States, it is generally admitted, that, in the English decisions, it is held, that a foundation must be laid as contended for in this case, whether the previous statements of the witness were verbal or written; and so it has been held by this court. (Weir *v.* McGee, 25 Tex. Supp., 32.) In addition to this, the statements could hardly be regarded as contradictory, because the subject of inquiry in one set of depositions was different from that of the other.

An affidavit was made by Samuel A. Roberts, one of the executors of C. C. Alexander, for the purpose of throwing suspicion upon, and of putting in issue the fact, that there existed such a partnership as that which was alleged by the pleadings of the plaintiff. Afterwards, a similar affidavit was

made by him, with the addition, that the draft was not exe-
cuted as alleged, in the nature of a plea of *non est factum*,
which, upon exceptions of plaintiff, was striken out. This
resulted in no injury to the executors; because the first
affidavit, treated as a plea denying the partnership as alleged,
was not stricken out, and the court, in its charge, required
the plaintiff to satisfy the jury that there was such a partner-
ship, and that the draft was executed by the authority of the
firm.

It is not necessary, in reference to another trial, to refer
to any other questions in the case. For the errors in the
rulings and charge of the court, the judgment is reversed
and the cause remanded.

REVERSED AND REMANDED.

[Associate Justice MOORE did not sit in this case.]