## CHARLES LEWIS V. C. C. ALEXANDER ET AL.

1. PLEADING.—A plaintiff in repleading filed an amended original petition, which by its terms was "in lieu of and in substitution for the original and all the other amended petitions heretofore filed." The paper filed failed to designate the date of filing of the various pleading for which it was substituted. The defendant filed general and special demurrers, and the court, by a general judgment, sustained the demurrers: *Held*—

   1. That whatever might be the effect of a judgment sustaining a motion to strike out an amendment because it failed to designate with sufficient certainty the particular pleading sought to be amended, as required by rule 13 for the District Courts, such failure would not be sufficient, of itself, to sustain a general judgment upon several demurrers to pleading so amended.

   2. In all amendments under the new rules, the dates and descriptions of the abandoned pleadings should be given, and district judges should see that this is done.

2. PLEADING.—In a suit on a promissory note, it was alleged that "on the 2d of May, 1865, (the date of the note,) B was the agent and employé of said firm of C & F, and as said agent, and in its name and for its use and benefit, and for value, made, executed, and delivered to plaintiff the said promissory note": *Held*, A sufficient allegation that B had authority to bind the firm of C & F as agent.

3. PLEADING.—See opinion for pleading held to contain sufficient allegations of a contract affecting the rights of survivorship in a partnership.

4. PLEADING—STATUTE OF FRAUDS.—A contract which, by the statute of frauds, is required to be in writing, need not in pleading be averred to have been in writing. Whether it was or not is a matter of evidence, not of pleading.

5. PLEADING—SURVIVORSHIP.—See opinion for a plea alleging an agreement regarding survivorship between partners, held not to be subject to the objection that it was in conflict with the written articles of copartnership, or that it varied a written contract.

6. ESTOPPEL—PLEADING.—See opinion for plea of estoppel which, if established, would preclude a defendant from denying the authority of an agent to bind a firm of which he was a member.

7. PLEADING—ESTOPPEL.—An estoppel defectively pleaded in one count of a petition, will not, on demurrer, authorize a judgment dismissing the petition, if, independent of the count, there be a good cause of action well pleaded.

8. LIMITATION—PLEADING.—Though under our practice the defense of the statute of limitations may be raised on demurrer, it can only be done when the petition shows that the length of time has elapsed which would bar the right of action.

9. ILLEGAL CONTRACTS IN TIME OF WAR.—It is not clear that either the ends of public justice or any great public policy will be subserved by permitting one of several parties who jointly engaged during a period of war in a traffic prohibited by law, and who obtained possession of the illegal gains, to add to the public wrong the private wrong of excluding the other party from participation in the proceeds.

ERROR from Fannin. Tried below before the Hon. R. R. Gaines.

The history of the proceedings in this case will be found in 34 Tex., 608, 609, 691, 692, and in the opinion of Chief Justice Roberts in 47 Tex., 482. After the case was last remanded, the plaintiff filed a petition which was designated as "in lieu of and in substitution for the original and all the amended petitions heretofore filed in this cause." A general demurrer and special demurrers were filed by defendants, which were sustained in a judgment which declared, in general terms, that, on hearing the exceptions of defendants to plaintiff's amended original petition, "the law is for the defendants," and after stating that plaintiff declined to amend, proceeded to adjudge costs, &c. From this judgment Lewis appealed. Every point decided is apparent from the opinion, in connection with the former history of the case contained in 34 and 47 Texas.

*H. D. & F. H. Prendergast,* for appellant.

I. The exporting cotton to Mexico and the importing cotton cards from Mexico under contract with the Military Board of Texas was not in violation of the laws of the United States in May, 1865.

The petition alleges that the firm of A. M. & C. C. Alexander were, in 1864 and 1865, the owners of some 4,000 bales of cotton in Texas, Louisiana, and the Indian Territory, which said cotton they were, in 1864 and 1865, transporting by wagons to Mexico and other markets for sale.

The petition further states that, in furtherance of the enterprise and to aid in its execution, A. M. Alexander obtained

from the Military Board then existing in the State of Texas permits to ship said cotton to Mexico.

In the contract between W. B. Knox and the Alexanders, which contract is referred to in the petition, it is recited that the contract between the Alexanders and the Military Board was for the purpose of transporting cotton to Mexico and importing cotton cards for said Military Board, and it is recited that said contract with the Military Board was dated October 10, 1864. (Kottwitz *v.* Alexander's Executors, 34 Tex., 710; Act of Congress of June 30, 1864, sec. 179; Bright. Dig., arts. 294, 301, secs. 177, 180.)

II. If the contract of the Alexanders with the Military Board to export cotton to Mexico and import cotton cards was illegal, it does not appear from the plaintiff's petition that the money called for in the draft sued on was loaned by plaintiff for the purpose of furthering said illegal enterprise, and said loan was not illegal.

It is stated in the petition that plaintiff loaned the money to A. M. & C. C. Alexander, and it is also stated that the firm of A. M. & C. C. Alexander owned at the date of said draft or note some 4,000 bales of cotton, and that it was necessary for said firm to borrow said money to pay expenses in moving said cotton to Matamoras and other points.

It is stated in said amended original petition that the money borrowed and used by said A. M. Alexander from the plaintiff, for which the draft sued on was given, was necessary to carry out the original partnership enterprise of A. M. & C. C. Alexander, and that it was used by A. M. Alexander for the benefit of the said partnership.

It is not stated in said petition that plaintiff Lewis loaned said money in furtherance of said enterprise of exporting cotton to Mexico. (Bishop *v.* Honey, 34 Tex., 245; Kottwitz *v.* Alexander's Executors, 34 Tex., 710; Bowry *v.* Bennet, 1 Camp., 348, cited in Benjamin on Sales, secs. 507, 510; Hill *v.* Spear, 50 N. H., 253; Gaylord *v.* Soragen, 32 Vt., 110; Aiken *v.* Blaisdell, 41 Vt., 656; Adams *v.* Coulliard, 102

Mass., 167; Lowell v. Boston and Lowell Railroad Co., 23 Pick., 32; Benjamin on Sales, secs. 532, 538; 2 Kent's Comm., 466.)

*E. M. Pease* and *Walton, Green & Hill,* also for appellant, cited, as applicable to the first exception to plaintiff's petition, Brock v. Jones, 16 Tex., 465; Story on Agency, secs. 239, 244, 249-252, 260; Livermore on Agency, sec. 4, pp. 44, 46; Whart. on Agents and Agency, secs. 68, 72-74, 76, 83, 85, 87, 89, 135, 137, 174; 2 Kent's Comm., secs. 614-616; Watson v. Bigelow, 47 Mo., 414, 415; Bronson's Executor v. Chappell, 12 Wall., 683; Bish. on Cont., secs. 381-384; Add. on Cont., sec. 60.)

I. The court erred in sustaining the second exception of defendants to plaintiff's petition.

The pleading setting up said agreement as to survivorship fails to state whether the same was in writing or verbal, nor does it state its date or terms clearly and fully. (Collyer on Part., sec. 4.)

II. The court erred in sustaining the seventh exception to plaintiff's petition, as follows: "Said pleading sets up a contract with the Military Board of Texas, made with said firm, to export cotton from Texas to Mexico and import cotton cards for said Military Board, when war was existing between the United States and the Confederate States, when to export said cotton to Mexico was in violation of the revenue laws of the United States, and that this money was loaned by plaintiff in furtherance of said contract, and no cause of action can arise on such illegal transaction." (Kottwitz v. Alexander's Executor, 34 Tex., 705, 710-713; De Leon v. Trevino, 49 Tex., 91-96.)

*R. B. Semple* and *W. B. Wright,* for appellees.

I. Where a defect is pointed out by demurrer or exception, and the plaintiff fails to cure that defect by amendment, the court must dismiss the cause. (Hughes v. Lane, 25 Tex., 365.)

II. To render a defendant liable on a note, it must be alleged and proven that he executed it himself, or authorized another to execute it. (Compton *v.* Stage Co., 25 Tex. Supp., 68; Paige *v.* Stone, 10 Metc., 160; Temple *v.* Pomroy, 4 Gray, 128; Insurance Co. *v.* McMillen, 24 Ohio St., 67.)

III. To allow plaintiff to show that there was an agreement between the parties varying the written articles of copartnership, he must show that he had knowledge of such agreement, and that the acts or declarations of the partners induced him to loan his money on the strength of such agreement. (Reber *v.* Col. Mach. Co., 12 Ohio St., 178.)

IV. In considering the scope of a demurrer, every allegation is to be taken most strongly against the pleader; and of the inconsistent allegations, that is to be taken which is most against his interest. (Snoddy *v.* Cage, 5 Tex., 116.)

V. Plaintiff alleges that the purpose of the partnership was to transport cotton to Mexico and other markets, for sale, during the war in 1864 and 1865; that the money for which the note was executed was loaned by plaintiff and used by said firm in their said business. The articles of copartnership show that the object of its organization was to carry out a contract with the Military Board of Texas, exporting cotton to Mexico and importing cotton cards for said Military Board; that plaintiff had constant dealings with said firm from its organization to its dissolution, and knew of its purpose.

That such facts prevented plaintiff from recovering on said note, see the following cases: Alexander *v.* Lewis, 47 Tex., 481; Texas *v.* White, 7 Wall., 734; Hanauer *v.* Doane, 12 Wall., 342; Whitis *v.* Polk, 36 Tex., 602; Converse *v.* Miller, 33 Tex., 216; Roquemore *v.* Alloway, 33 Tex., 461.

*Hancock, West & North,* also for appellees. [Their brief did not reach the reporters.]

BONNER, ASSOCIATE JUSTICE.—This is the third time this case has been before this court. (34 Tex., 608; 47 Tex., 481.)

After it was remanded the last time, the plaintiff filed an amended original petition as a substitute for all his previous pleadings, in which he seems to have endeavored to obviate the objections to them suggested by the former opinion of the court.

To this the defendant filed a separate special demurrer and a general and even additional special demurrers.

On the trial below, the court, by a general judgment, sustained the demurrers without further designation; and the plaintiff refusing to amend, the cause was dismissed.   From that judgment this appeal is prosecuted.

The assignment of error is, that the court erred in sustaining exceptions of defendants to plaintiff's petition.

As the consideration of the special demurrers will virtually involve that of the general demurrer, these will be disposed of in the order presented by counsel.

The separate special demurrer is, that the said amended original petition failed to comply with rule 13 of the District Courts, in not pointing out what instrument or instruments of pleadings it seeks to amend by said amendment, and failed to inform the court, or the parties to the suit, what pleadings appellant now relies on to establish his cause of action.

Whatever might be the effect of a judgment sustaining a motion to strike out an amendment because it did not designate with sufficient certainty the particular pleading sought to be amended, as required by rule 13 for the District Courts, we are of opinion that such failure would not be sufficient, of itself, to sustain a general judgment upon several demurrers to a pleading so amended.

The pleading complained of was an amended original petition, and by its terms "was in lieu of and in substitution for the original and all the amended petitions heretofore filed in this cause."

Thus regarded, it was in the nature of a repleader under rule 29, in which the reason for such particular designation

does not apply with the same force as when some one particular pleading is amended.

Good reasons exist, however, that in all amendments under the new rules the dates and description of the abandoned pleading should be given. This is illustrated by the case under consideration, as we cannot ascertain from the record as presented when this suit was instituted.

As important rights might in some cases be defeated by failure to observe the rules in this regard, it is suggested that the district judges should see that they are enforced.

The first special exception of defendants is, that said pleading fails to state that their said testators ever executed said draft or note, or authorized its execution, or that said William Cloud had authority to sign said firm name of A. M. & C. C. Alexander to said draft or note.

The petition states that on the 2d of May, 1865, one William Cloud was the agent and employé of said firm of A. M. & C. C. Alexander, and as said agent, and in its name, and for its use and benefit, and for value, made, executed, and delivered to plaintiff the said promissory note or draft.

We think these allegations are substantially sufficient to show that Cloud had authority to bind the firm of A. M. & C. C. Alexander as agent.

The second special exception is, that the pleading setting up said agreement as to survivorship fails to state whether the same was in writing or verbal, nor does it state its date or terms clearly and fully.

These allegations are made with reasonable certainty as to dates and terms.

It is substantially averred that in or about the year 1864, when A. M. & C. C. Alexander entered into the original contract of copartnership, it was agreed between them, that in case of the death of either the business should be carried on the same as before said death, to its final consummation; that such survivor should continue to have and exercise all the power and authority he might do before such death, and their

agents be clothed with the same authority to transact any and all business of the firm as well after as before the death of either member of the firm.

The same strictness of pleading should not be required of the plaintiff, who is not presumed to have had a particular knowledge of the agreement, that would be required of a party to it.

It is a rule of pleading, and which has been repeatedly recognized by this court, that even contracts which, by the statute of frauds, are required to be in writing, need not be thus averred, this being a question of evidence, not of pleading. (Gould on Plead., ch. 4, sec. 43; Cross *v.* Everts, 28 Tex., 531, and authorities cited.)

The third special exception is, that said agreement of survivorship is directly in conflict with the written articles of copartnership under which the cause of action is alleged to have arisen, and said pleadings thereby attempt to vary a written contract.

The petition alleges that A. M. & C. C. Alexander, in the year 1864, entered into copartnership, and it was agreed between them, that in the event of the death of either their partnership business should continue and be carried on by the survivor the same as before the death, to the final end and consummation of the enterprise; that such survivor should continue to have and exercise all the power and authority that he might do before said death, and their agents be clothed with the same authority to transact any and all business of the firm as well after as before the death of either member of the firm; that such was the contract existing between A. M. & C. C. Alexander at the time Knox entered and became a member of the firm, thereafter composed of A. M. & C. C. Alexander on the one part and W. B. Knox of the other, which was to continue to do business in the old firm name of A. M. & C. C. Alexander; that Knox understood and knew the terms of the original partnership of A. M. & C. C. Alexander at the time he contracted to engage

in business as aforesaid with them, and accepted and agreed to all the conditions thereof, and became bound thereby in case of the death of either member of the firm; that Knox was a secret partner from the date of the articles of copartnership with him, to wit, from the 26th of November, 1864; that he was fully cognizant of the original agreement between A. M. & C. C. Alexander, and entered into business as aforesaid with them with the understanding that he would carry out the said agreement with reference to said survivorship.

The doctrine that by express agreement a partnership may be continued by the survivor after the death of one partner, was recognized by this court in the former appeals in this case. (34 Tex., 608; 47 Tex., 481.)

The articles of copartnership between A. M. & C. C. Alexander and W. B. Knox expressly refer to the prior contract entered into by A. M. Alexander with the Military Board of the State of Texas. It was evidently contemplated that Knox should be admitted as a partner in this contract and upon the basis of the original agreement. It seems to have been not so much the formation of an entirely new and original contract, as an agreement to admit him into one already existing. As thus presented to us, we are not prepared to say that this exception was well taken.

The fourth special exception is, that the estoppel pleaded against said defendant Knox is not sufficiently pleaded, as no act or word of said Knox inducing plaintiff to loan said money is therein alleged, and said plea of estoppel is argumentative.

Among other allegations, it was averred that plaintiff had dealings from time to time with the firm of A. M. & C. C. Alexander from the formation of their original partnership down to the time Knox became a member, and from that time frequently and continuously down to the date of the death of C. C. Alexander, all in the immediate presence of said Knox and with his full approbation and knowledge of the facts; that plaintiff was then dealing with said firm with-

out a knowledge on his part that Knox had any connection with or interest therein; that Knox, for the purpose of defrauding the creditors of said firm, of which he was a secret partner, and especially after the death of C. C. Alexander, studiously concealed the fact of his interest in and connection with the business, well knowing that A. M. Alexander was proceeding with the business, after the death of C. C. Alexander, the same as before, and that by reason of the fraudulent acts, conduct, and concealment of Knox, and by reason of the original agreement between the Alexanders, which agreement was well known to plaintiff, he was induced to act on his information and to accept the instrument sued on in settlement of the debt for money loaned as aforesaid; that all this time Knox knew plaintiff was accepting said draft without a knowledge of Knox's interest in said partnership, and that in so doing plaintiff was relying on the original agreement of partnership between the Alexanders; that, knowing the original agreement between the Alexanders, he believed the agent Cloud had the right to execute the draft and that it would bind the firm and each of its members.

For the purposes of the demurrer, these allegations are taken as true, and if sustained by the testimony would, in our opinion, be sufficient to estop the defendant Knox from denying the authority of the alleged agent to bind the firm, upon that salutary principle, that he who is silent when he should speak shall not be heard to speak when he should be silent. (Pickard v. Sears, 33 Eng. Com. Law, 117; Love v. Barber, 17 Tex., 312; Burleson v. Burleson, 28 Tex., 415.)

If, however, it be conceded that this was not technically good as a plea in estoppel, yet a defect in one count should not be sufficient on demurrer to dismiss a petition on a good cause of action well pleaded in other respects.

The fifth special exception is as follows: "That portion of the pleading which attempts to make the estate of C. C. Alexander liable because the representatives thereof seized the partnership property, presents a new cause of action more than

two or four years prior to the filing of said pleading, or of any other of plaintiff's pleading herein setting up the same, and is barred by the statute of limitations of two and four years, and defendants plead by way of exception said statute of two and four years in bar to this action."

Although, under our practice, the defense of the statute of limitations is available in a proper case by demurrer, this is only when it appears by affirmative allegation in the petition that the length of time has elapsed which would bar the right of action.

It is not shown by the record as presented when this suit was instituted, although it appears by a recital in the petition upon which the trial was had, that an amended petition had been filed on December 27, 1867.

It is also a sufficient answer to the demurrer to say that it does not appear from the record but what the allegation referred to was embraced in the former pleadings.

We are further of opinion, from the facts and circumstances developed by the record, that this allegation does not partake so much of a new and distinct cause of action, as of an averment of the means by which the payment of the original demand may be enforced by tracing the partnership assets into the possession of the representatives of the estate of C. C. Alexander, and thus either make this a preferred fund to pay the alleged partnership debt, or to make the general assets liable for that purpose to the extent to which they may have been thus increased.

The sixth special demurrer is, that said pleading fails to state such facts as authorize the court to decree these defendants, or any of them, or the estate of said Alexander, liable on said note or draft.

This is, in effect, a general demurrer, and has and will be disposed of under the other errors assigned.

The seventh special demurrer is, that said pleading sets up a contract with the Military Board of Texas, made with said firm, to export cotton from Texas to Mexico and import

cotton cards for said Military Board, when war was existing between the United States and the Confederate States, when to export said cotton to Mexico was in violation of the revenue laws of the United States, and that this money was loaned by plaintiff in furtherance of said contract, and no cause of action can arise on such illegal transaction.

The draft or note sued on is as follows:

"$8,529.85.          SAN ANTONIO, TEXAS, *May* 2, 1865.

Sixty days after date pay to the order of Charles Lewis, Esq., eighty-five hundred and twenty-nine dollars and eighty-five cents, value received, and charge same to account of,

       Your ob'd't serv'ts,     A. M. & C. C. ALEXANDER.

                               Ag't, CLOUD.

To A. M. & C. C. ALEXANDER, San Antonio, Texas."

Indorsed on the face: "A. S. Kottwits & Co."

The agreement of copartnership between the Alexanders and Knox is, substantially, as follows:

"One-third of a contract, or the profits accruing therefrom, made by A. M. Alexander with the Military Board of the State of Texas on October 10, 1864, for the exportation of cotton to Mexico and the importation of cotton cards for said Military Board, is transferred to W. B. Knox by A. M. & C. C. Alexander, Knox to furnish $25,000 in specie to be [used] in carrying out said contract, and A. M. & C. C. Alexander 4,000 bales of cotton in Northern and Eastern Texas at 5 cents per pound and $15,000 in specie; Knox to have a one-third interest in all contracts which may be made with the Military Board. All the parties to devote their time and attention to the common enterprise. Losses to be borne as profits are divided. Either party may withdraw after thirty days' notice. Dated November 26, 1864."

Although a public wrong done to a government may, in a proper case, be punished under the rules of war by seizure and confiscation of property used in the illegal enterprise, it is not so clear that either the ends of public justice or any great public policy will be subserved by permitting one of the

offending parties, who may be so fortunate as to have obtained possession of the illegal gains, to add to his public wrong a private wrong, by excluding the other party from all participation in the proceeds.

True it is, the law negatively permits this by refusing to lend its aid to either party; but the courts are not inclined to extend the rule beyond the immediate parties or subject-matter of the illegal contract itself. (De Leon v. Trevino, 49 Tex., 88; Boggess v. Lilly, 18 Tex., 200; Mills v. Johnston, 23 Tex., 308; Brooks v. Martin, 2 Wall., 70; Planters' Bank v. Union Bank, 16 Wall., 483; Sharp v. Taylor, 2 Phil. Ch., 801.)

The late Government of the Confederate States issued its money to aid directly in the prosecution of hostilities against the United States. Every one who used this money gave indirectly aid and encouragement to the government which issued it; yet, by repeated decisions of this court and of the Supreme Court of the United States, Confederate money contracts have been held not to be void for irregularity. (Mathews v. Rucker, 41 Tex., 636; Short v. Abernathy, 42 Tex., 94; San Patricio Co. v. McClane, 44 Tex., 392; Roller v. Wooldridge, 46 Tex., 485; Rodgers v. Bass, 46 Tex., 505; Edmonds v. Sheahan, 47 Tex., 443; McManus v. Scott, 48 Tex., 601; Delmas v. Insurance Co., 14 Wall., 661; Thorington v. Smith, 8 Wall., 1; Railroad Co. v. King, 1 Otto, 3; Stewart v. Salamon, 4 Otto, 435.)

If the propositions be conceded, (to which, however, we do not assent, and in regard to which it is not necessary here to express an opinion,) that in courts of civil procedure, whatever might be the rule in courts military, there should be no distinction between the illegality of an alleged act when committed upon individual responsibility and one committed through the agency of a sovereign State, or between an act having for its direct object to aid unlawful hostility and one to afford to a destitute and suffering people the common necessities of life, as in the contract here sought to be avoided,

by the exportation, through the agency of the State of Texas, of cotton, a natural product essential to the common wants of civilized life, and the importation of cotton cards, a harmless implement of practical industry,—still the allegations of the petition under consideration do not show affirmatively such facts as, under the authority of adjudged cases, would defeat the plaintiff's right to recover.

The case as now presented is essentially different in the allegations upon this issue from that on the last appeal.

The record as then presented set up the illegality of the draft sued on, because it was alleged to have been given " for services rendered, money loaned, and cotton sold by said Lewis to A. M. Alexander, with a full knowledge of the objects of the partnership and with the intent to aid the purpose thereof"; and that the " consideration of said draft was cotton, which the said A. M. Alexander exported for said plaintiff under said contract with the Military Board, and that plaintiff delivered said cotton with full knowledge of the illegal business in which said A. M. Alexander was engaged and with the intent to advance the purpose thereof." (47 Tex., 490.)

If the pleading of the plaintiff as now presented under this issue should be construed most strongly against him, it would be but equivalent to the allegation that he loaned the money for which the draft was given with the knowledge that it would probably be used in the alleged illegal enterprise of exporting cotton from the State of Texas and importing cotton cards therein.

That the mere knowledge that money loaned might be used in an illegal enterprise, would not, of itself, without other act in aid or in furtherance thereof, defeat the right to recover, has been decided in this case on a former appeal. (Lewis *v.* Alexander, 34 Tex., 608, referring to Kottwitz *v.* Alexander, 34 Tex., 689; Kreiss *v.* Seligman, 8 Barb., 449; 1 Pars. on Cont., 456.)

In the cases of Converse *v.* Miller, 33 Tex., 216, and Whitis

*v.* Polk, 36 Tex., 602, the parties seeking relief were actual participants in the alleged illegal act and shared in the proceeds of the adventure.

It is much to be regretted that this litigation has been so protracted, and that the issues involved have not long since been adjusted and buried with the sad memories of the dead past which gave them birth.

As, however, we are of opinion that there was error in sustaining the demurrers to the petition and dismissing the cause, which prevented a trial upon the merits, the judgment below must again be reversed and the cause remanded.

REVERSED AND REMANDED.

[Chief Justice MOORE, having been of counsel, did not sit in this case.]